RICHARD L. DAILEY, *Tax Commissioner,*
*State of West Virginia*

*v.*

BECHTEL CORPORATION, *a corporation*

(No. 13431)

Decided July 23, 1974.

*Chauncey H. Browning, Jr.,* Attorney General, *Jack C.
McClung,* Deputy Attorney General. *William F. Carroll,*
Assistant Attorney General for appellant.

*James, Wise, Robinson & Magnuson, E. Glenn Robinson* for appellee.

SPROUSE, JUSTICE:

This case is before the Court upon an appeal from a final judgment of the Circuit Court of Kanawha County in a declaratory judgment proceeding instituted by Richard L. Dailey, Tax Commissioner of the State of West Virginia, as the plaintiff, against Bechtel Corporation, as the defendant. The proceeding was instituted at the request of Bechtel, pursuant to the provisions of Code, 1931, 11-1-2a, as amended, for the purpose of ascertaining whether any portion of the business and occupation tax imposed upon Bechtel had been unlawfully collected by the State of West Virginia for the period ending December 31, 1965, through the period ending September 30, 1968, inclusive. The trial court found that a portion of the tax had been erroneously levied on the sums received by Bechtel as reimbursements for expenses. The court, on March 15, 1973, ordered the commissioner to refund to the taxpayer $267,406.81 collected from it for the period ending June 30, 1967 through the period ending September 30, 1968, inclusive. It is from this judgment that the plaintiff prosecutes its appeal to this Court. The issue is whether such sums received by the taxpayer as reimbursements are excluded from the business and occupation tax provisions of Code, 1931, 11-13, as amended, by this Court's decision in *Bethlehem Mines Corporation v. Haden,* 153 W.Va. 721, 172 S.E.2d 126.

Bechtel is a foreign corporation authorized and qualified to do business in the State of West Virginia. It is engaged in the business of providing and performing construction, engineering, construction management, and procurement services in connection with the improvement of real and personal property.

On September 17, 1965, Bechtel entered into a contract with National Steel Corporation. The project, as set forth in the contract, consisted of the construction of all the

apparatus and necessary appurtenant facilities to enable National to utilize oxygen as fuel to fire furnaces for the manufacture of steel at National's plant in Weirton, West Virginia. As part of its performance, Bechtel agreed to provide management services for the construction of an elevated highway to be used in connection with the project.

The relevant facts of the case are undisputed and were ascertained from the stipulation and exhibits filed by the parties. Under the terms of the contract, five different methods of payment were set forth. Bechtel was to be paid $1,125,000 as a fee for performance of work under the contract, and a lump sum price of $1,354,000 as compensation for supervision and construction management services. Additionally, other work was to be paid by a "unit price" formula or on a "cost reimbursable" basis. Alternatively under this latter category, National could elect to have Bechtel perform the work on a lump sum basis or request Bechtel to subcontract such work on a lowest responsible bid basis.

Bechtel commenced work on the project in the last quarter of 1965. In order to resolve difficulties encountered in administering and in accounting for the "unit price" provisions of the contract, Bechtel and National executed a written amendment of the contract on June 20, 1966. The effect of the amendment was to delete entirely all contract provisions applicable to "unit prices" effective July 18, 1966. In amended form the contract provided that work previously covered on a "unit price" basis would be performed on a "cost reimbursable" basis.

On September 13, 1966, the contract was again amended by Bechtel and National. By this amendment, which was effective October 1, 1966, the lump sum price was deleted and the parties agreed that any work performed was to be "paid for on a cost reimbursable basis, retroactive to the commencement of the work." Consequently, in amended form the contract provided for Bechtel to receive a fee

of $1,125,000 and to be reimbursed for its expenses in the construction, management and supervision of the project.

Bechtel reported to the commissioner as gross income received from National the sum of $24,440,861.12 for the period ending December 31, 1965, through the period ending September 30, 1968, and paid a business and occupation tax in the amount of $488,667.21 pursuant to the provisions of Code, 1931, 11-13-2e, as amended, prescribing the tax rate paid by persons engaged in the business of contracting in this State.

On July 9, 1970, the defendant filed a petition for a refund with the commissioner, alleging that under the provisions of Article 13, Chapter 11, Code, 1931, as amended, as construed by this Court in *Bethlehem Mines Corporation v. Haden, supra,* the amounts which represented reimbursed costs and expenses under the contract were erroneously included in Bechtel's gross income; that the total gross income of the defendant corporation was $2,217,827.71, being composed of the fixed fee of $1,125,-000, the unit price work payment for work completed prior to July 18, 1966, in the amount of $1,048,027.88 and $44,799.83 received from sources other than National; and that, since only $44,356.55 was tax due and owing, a refund in the sum of $444,310.66 was due and owing the defendant. The commissioner, by an administrative decision, refused to grant the refund prayed for in the petition.

At trial, the parties stipulated that the time limitation provisions of Code, 1931, 11-1-2a, as amended, barred a refund of taxes collected prior to April 15, 1967, in the sum of $176,903.86. It was stipulated that this amount was to be deducted from the total tax paid in the amount of $488,667.21. The additional sum of $44,356.55, representing the amount of taxes not claimed to be subject to refund, was likewise deducted. This left a balance of $267,406.81 alleged to have been unlawfully collected.

The *Bethlehem Mines* case involved three corporate entities: Bethlehem Mines Corporation (management

company), Bethlehem Minerals Company (mining company), and Bethlehem Steel Company (manufacturing company). All three were wholly owned subsidiaries of Bethlehem Steel Corporation. There was interlocking membership on the board of directors of all three companies. Each officer of Bethlehem Mines, the taxpayer corporation, was an officer in each of the other three corporate entities.

The parent company owned or leased certain coal reserves in the State which it in turn leased to mining company for operation and production. Pursuant to an agreement between the mining company and the taxpayer, the taxpayer managed the operation of the coal properties for the mining company, purchasing materials and supplies, employing labor, and providing technical assistance. The mining company then produced the coal and sold it to the manufacturing company. By a complicated method of intercorporate accounting, the operating expenses of the mining company, including purchases and payroll, were paid by the manufacturing company through the taxpayer.

The taxpayer reported gross receipts derived solely from its fee for management services performed pursuant to its operating agreement with the mining company. The tax commissioner reclassified the income of taxpayer from "rents and royalties" under Code, 1931, 11-13-2i, as amended, to "service" under Code, 1931, 11-13-2h, as amended, thus increasing the gross income by the full amount of the operating expenses for which taxpayer had been reimbursed by mining company and the funds for which had actually been originally furnished by the manufacturing company.

The applicable statute, Code, 1931, 11-13-1, as amended, as it was worded at the time of the *Bethlehem Mines* case and at the time governing the instant case, defined gross income as:

> "* * * [T]he gross receipts of the taxpayer received as compensation for personal services and

the gross receipts of the taxpayer derived from trade, business, commerce or sales and the value proceeding or accruing from the sale of tangible property (real or personal), or service, or both, and all receipts by reason of the investment of the capital of the business engaged in, including rentals, royalties, fees or other emoluments however designated and without any deductions on account of the cost of property sold, the cost of materials used, labor costs, taxes, royalties, interest or discount paid or any other expense whatsoever."

This Court held in *Bethlehem Mines* in the fourth point of the Syllabus stating that:

"* * * Gross income does not include reimbursements from a party to a taxpayer for expenditures made by the taxpayer in accordance with the provisions of an agreement between the taxpayer and such party when it is clear from the terms of the agreement and the manner in which it is executed that such reimbursements were not a part of the remuneration of the taxpayer for services rendered to the other party to the agreement."

The major theory advanced by the commissioner is that the *Bethlehem Mines* decision, constituting a single case upon the issue, has no significance as precedent under the doctrine of stare decisis. This position, the commissioner argues, is bolstered by the action of the Legislature in 1971. The Legislature in that year, indicating it was reacting to the *Bethlehem Mines* decision, amended Code, 11-13-1, so that reimbursed expenses were specifically included as gross income and subject to the business and occupation tax.

We cannot accept a theory limiting the doctrine of stare decisis so narrowly. In the instant case, we are bound by the decision of this Court in *Bethlehem Mines* unless it can be distinguished on the facts. Admittedly, there is authority holding contrary to our decision in that case. See *Red Cedar Shingle Bureau v. Washington,* 62 Wash. 2d 341, 382 P.2d 503; *North Pacific Coast Freight Bureau v. State,* 12 Wash. 2d 563, 122 P.2d 467. The principle of stare

decisis, however, is firmly rooted in our jurisprudence. Uniformity and continuity in law are necessary. Douglas, *Stare Decisis*, 49 Colum. L. Rev. 735. While the principle of stare decisis admits of exception, deviation from its application should not occur absent some urgent and compelling reason. As this Court said in *Adkins v. St. Francis Hospital,* 149 W.Va. 705, 718, 143 S.E.2d 154, 162:

> "* * * Stare decisis is not a rule of law but is a matter of judicial policy. * * * It is a policy which promotes certainty, stability and uniformity in the law. It should be deviated from only when urgent reason requires deviation. * * * In the rare case when it clearly is apparent that an error has been made or that the application of an outmoded rule, due to changing conditions, results in injustice, deviation from that policy is warranted."

We may have felt differently about the disposition were we reviewing *Bethlehem Mines* again for the first time. If the doctrine of stare decisis is to play any judicial role, however, we cannot overrule a decision so recently rendered without any evidence of changing conditions or serious judicial error in interpretation. Mere disagreement as to how a case was decided is not a sufficient reason to deviate from a judicial policy promoting certainty, stability and uniformity in the law.

While Code, 11-13-1, was amended and reenacted by Chapter 169, Acts of the Legislature, Regular Session, 1971, to redefine gross income by specifically including reimbursed costs and expenses, this legislative action can have no bearing upon taxes due and owing prior to the effective date of the amendment. In the absence of a clear expression of intent by the legislature, the statute should not be given a retroactive application by this Court. 73 Am. Jur. 2d, *Statutes,* Section 350, page 487; *Maxwell v. State Compensation Director,* 150 W.Va. 123, 144 S.E.2d 493.

The tax commissioner secondly contends that this case is distinguishable from *Bethlehem Mines* in that in the National — Bechtel situation: (1) There was no similar

intercorporate relationship; (2) no affiliation existed between the two corporations by way of merger or ownership; (3) the contract was stipulated to be an arms length transaction; and (4) all items of cost, charges and expenses reimbursed by National were Bechtel's obligations (in contrast to the fact that the manufacturing company furnished the taxpayer with funds for such expenses in *Bethlehem Mines*).

The commissioner also takes the position that the reimbursement involved in *Bethlehem Mines* was essentially a bookkeeping mechanism, whereas in the instant case the contract recognizes such reimbursable expenses as a part of the "total amount earned" by Bechtel and Bechtel recognized it as gross income by paying taxes thereon.

The applicable facts in *Bethlehem Mines* were certainly different from those present in this case—just as the facts concerning any different contractual relationship would differ. The difference between the Bethlehem Mines—Bethlehem Mineral relationship and the Bechtel—National relationship, however, for the purpose of the business and occupation tax is a difference without legal meaning as was indicated by Judge Browning in *Bethlehem Mines*: "* * * [W]e are of the view that the relationship between the parties is not the controlling issue in this case. * * *" *Bethlehem Mines Corporation v. Haden, supra* at 740, 172 S.E.2d at 137. The key language from that decision is: "* * * Gross income does not include reimbursements * * * made * * * in accordance with the provisions of an agreement * * * when it is clear from the terms of the agreement * * * that such reimbursements were not a part of the remuneration of the taxpayer * * *." *Bethlehem Mines Corporation v. Haden, supra* at point 4 syllabus.

It is obvious that the reimbursements to Bechtel for expenses were no more contemplated to be remuneration than were the reimbursements for expenses made to Bethlehem Mines.

For reasons stated in this opinion, the judgment of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*

Justice Haden, deeming himself disqualified, did not participate in the consideration or decision of this case.