403 S.E.2d 399

**Sam R. HARSHBARGER**

v.

**Glen B. GAINER, Auditor.**

**No. 19713.**

Supreme Court of Appeals of
West Virginia.

Jan. 22, 1991.

Concurring Opinion of Circuit Judge
Stephens April 4, 1991.

Roger W. Tompkins, Atty. Gen., Bruce
Ray Walker, Deputy Atty. Gen., Charleston, for Glen B. Gainer.

Rudolph L. diTrapano, Lonnie C. Simmons, diTrapano & Jackson, Charleston,
for Sam R. Harshbarger.

WILSON, Circuit Judge:

■ This case requires us to determine
whether *In re Dostert*,[1] the controversial

---

1. *In Re Dostert*, 174 W.Va. 258, 324 S.E.2d 402
(1984), Justice Miller did not participate and

Justice Neely dissented.

decision that liberalized eligibility requirements under the judges' retirement system, should be disapproved. The Circuit Court of Kanawha County, based upon our holdings in *Dostert, Oakley v. Gainer*,[2] and *DePond v. Gainer*[3], which allow credit for public and military service, concluded that Justice Sam R. Harshbarger is eligible to receive a pension under the judges' retirement system.

We believe it is time to abandon *Dostert* and its progeny—*Oakley* and *DePond.* For that reason we reverse the Order of the Circuit Court of Kanawha County granting Justice Sam R. Harshbarger, appellee, a writ ordering appellant, Glen B. Gainer, Auditor, to pay a judicial pension and ordering appellant to pay appellee's court costs and attorneys' fees.

Appellee, Justice Sam R. Harshbarger, was a scholarly and compassionate member of this Court from 1976 until 1984. His eight years of service as a justice and four years of service in the military did not qualify him for a pension under the judges' retirement system.[4] However, because of the holdings of *Dostert* and *DePond,* the state auditor, under protest, certified to the governor that Justice Harshbarger was eligible to receive retirement benefits in the judges' retirement system. When the state auditor later cancelled the statement of eligibility, Justice Harshbarger sought a writ of mandamus from the Circuit Court of Kanawha County compelling the state auditor to begin paying him a judicial pension.

The *Dostert* and *DePond* decisions permitted Justice Harshbarger to include, as creditable service in the judges' retirement system, four years in the military and fourteen years as city attorney of Milton, West Virginia. After paying $10,500.00, Justice Harshbarger, in accordance with the *Dostert* decision's judicially created retirement system, became eligible to receive from the judges' retirement fund an amount equal to 75% of the salary he received as a justice for so long as he lives. Without *Dostert,* Justice Harshbarger has only eight years of credited service—the eight years he actually served on this Court—and does not qualify for a judicial pension. Justice Harshbarger however, could have qualified for a much less generous pension under the public employees retirement system.

A look at the historical background of the *Dostert* case is helpful in understanding our reasons for our now disapproving it. The *Dostert* decision is unique among all reported opinions in this jurisdiction in terms of a truly exotic procedural history. Judge Pierre F. Dostert of the Thirty–First Judicial Circuit had been convicted of criminal contempt, and disciplinary proceedings were pending before the Judicial Investigation Commission. Judge Dostert was the only party before the Court. It is impossible to determine the *ratio decidendi* of the *Dostert* decision by ascertaining what *question* was presented to this Court to be answered.

The issue that brought *Dostert* to our docket was whether Judge Dostert should be suspended pending final disposition of the judicial disciplinary proceedings against him. Upon hearing "through administrative channels" (and the Charleston Gazette)[5] that Judge Dostert claimed ill health, the Court ordered its administrative director to intervene as a party in interest. The administrative director then petitioned for clarification of the law concerning the judges' retirement system and the public employees retirement system that might impact upon Judge Dostert's potential disability retirement.[6]

---

**2.** *Oakley v. Gainer*, 175 W.Va. 115, 331 S.E.2d 846 (1985).

**3.** *DePond v. Gainer*, 177 W.Va. 173, 351 S.E.2d 358 (1986).

**4.** The two retirement systems for judges are the West Virginia Retirement System for Judges of Courts of Record, *W.Va.Code*, 51–9–1 *et seq.* [1987] and the West Virginia Public Employees

Retirement Act, *W.Va.Code,* 5–10–1 *et seq.* [1988]. References in this decision to the "judges' retirement system" and to a "judicial pension" are to the West Virginia Retirement System for Judges of Courts of Record.

**5.** *Dostert, supra* n. 1, 174 W.Va. at 263, 324 S.E.2d at 407.

**6.** *Id.,* 174 W.Va. at 266, 324 S.E.2d at 410.

The Court never confronted the suspension issue because Judge Dostert voluntarily agreed to refrain from conducting his judicial duties until the conclusion of the disciplinary proceedings and the Court entered an order relieving him of all judicial duties until further notice. Thus, but for the Court ordered involvement of its own administrative director, the case would have ended in an eminently undramatic fashion.[7]

By a sort of legal alchemy, the Court combined its constitutional authority[8] to retire disabled judges who are eligible for a judicial pension with Judge Dostert's illness claim and miraculously transmuted what began as a pedestrian disciplinary proceeding into a juridical *tour-de-force* culminating in a consideration of the constitutionality of the judges' retirement system.

As previously noted, Judge Dostert's deteriorating physical condition has resulted in a claim for workers' compensation disability benefits and recusal from the exercise of his judicial duties. Therefore, issues involving the interpretation of our judicial retirement statutes and West Virginia Constitution art. VIII § 8 are raised.[9]

When the Court concluded its consideration of what it referred to as those issues "essential to Judge Dostert's establishing his eligibility for benefits under the judicial or public employee retirement systems,"[10] a substantially altered and lavishly expanded judicial retirement system emerged. Justice Brotherton, in a stinging dissent in *DePond*, challenges with relentless rationality the flawed reasoning of the *Dostert* opinion and his analysis will not be repeated here.[11]

West Virginians reacted both negatively and vehemently to the *Dostert* judge-created retirement system. Whatever its theoretical underpinnings, the *Dostert* decision was seen as an effort by the judiciary to advance its own self-interest. A disgruntled legislature also reacted by amending the judicial retirement system in 1987. In a statement of legislative intent prefacing the retirement system amendments, *W. Va. Code*, 51–9–1b [1987], the Court was accused of usurping the authority of the legislature to determine the public policy of this State and to set judicial compensation.

We are in substantial agreement with the legislature's opinion in this last regard. The legislature cannot impair or diminish the contractually vested property rights of retired and active members of the retirement system for judges.[12] But when the Court exceeds its structural limits and engages in self-serving lawmaking, masquerading as constitutional adjudication, the legislature has the right and responsibility to protect the fiscal soundness of the judicial retirement system. *See W. Va. Code*, 51–9–1b [1987].

In choosing to discard the holdings of *Dostert* and its progeny, we are sensitive to the doctrine of *stare decisis*, and we are aware of Mr. Justice Cardozo's warning that, "[a]dherence to precedent must be the rule rather than the exception if litigants are to have faith in the evenhanded administration of justice in the courts."[13] But Justice Cardozo also said, when discussing adherence to precedent, "I think that when a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avow and full abandonment."[14]

---

7. In fact Judge Dostert did not participate in the West Virginia Retirement System for Judges of Courts of Record but was a member of the public employees retirement system. *Id.*

8. *W. Va. Const.*, article VIII, § 8.

9. *Dostert, supra* n. 2, 174 W.Va. at 265, 324 S.E.2d at 409.

10. *Id.*, 174 W.Va. at 266, 324 S.E.2d at 410.

11. *DePond, supra* n. 3 (Brotherton, J., dissenting), 177 W.Va. at 206, 351 S.E.2d at 392.

12. *See Wagoner v. Gainer*, 167 W.Va. 139, 279 S.E.2d 636 (1981).

13. B. Cardozo, *The Nature of the Judicial Process*, 34 (1921).

14. *Id.* at 150.

We declare that by the lavish expansion of the judicial retirement system in *Dostert*, this Court invaded rights that were reserved by the *Constitution of the State of West Virginia* to the legislature. In so holding, we rely on the following long-standing and deeply rooted principles of constitutional adjudication.

## JUSTICIABLE QUESTION

■ The *Dostert* majority should not have considered the "constitutionality" of the judicial retirement system because the nature of the judicial retirement system was not a "justiciable controversy" in the case before the Court. In *Mainella v. Board of Trustees of Policemen's Pension or Relief Fund of City of Fairmont*, 126 W.Va. 183, 185–86, 27 S.E.2d 486, 487–88 (1943), we said:

> Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other before jurisdiction of a suit may be taken.

Since President Washington, in 1793, sought and was refused legal advice from the Justices of the United States Supreme Court, courts—state and federal—have continuously maintained that they will not give "advisory opinions." [15] And it is also well settled that "[l]itigants may challenge the constitutionality of a statute only insofar as it affects them." [16]

■ Art. III of the *Constitution of the United States* is sometimes cited as the source of the limitations of the "judicial power" to "cases and controversies." [17] The "justiciable controversy" requirement in West Virginia is usually found in cases arising under the declaratory judgment act (even though the declaratory judgment act does not mandate an actual dispute or controversy), but the actual dispute or controversy rule applies to all West Virginia judicial proceedings. *Dostert*, of course, was not even a declaratory judgment action. [18]

The issue in *Dostert* was, simply, whether Judge Dostert should be suspended pending final disposition of the judicial disciplinary proceedings against him. Judge Dostert resolved that issue by agreeing to refrain from conducting judicial duties until the final resolution of the judicial disciplinary proceedings. [19] Clearly, no justiciable controversy existed at that time involving Judge Dostert's right to receive retirement benefits. [20]

The majority in *Dostert* created the judicial retirement constitutional issue by ordering its own administrative director to intervene in the case. Through the use of information outside of the record before the Court, the majority forged a constitutional issue. In doing so, the court paved the way for an advisory opinion on an issue that was at most a mere contingent possibility. [21] There was no present controversy nor present necessity of requiring the construction of the judicial retirement statute. [22]

We recognize that in cases which are primarily concerned with a declaration of

15. *See* P. Barton, D. Meltzer, P. Mishkin & D. Shapiro. *Hart & Wechsler's The Federal Courts and the Federal System* (3rd ed. 1988) 67–72.

16. *Fleming v. Rhodes*, 331 U.S. 100, 104, 67 S.Ct. 1140, 1142, 91 L.Ed. 1368 (1947).

17. Brilmayer, *The Jurisprudence of Article III: Perspectives on the "Case or Controversy" Requirement*, 93 Harv.L.Rev. 297 (1979).

18. *Hodges v. Public Service Commission*, 110 W.Va. 649, 651, 159 S.E. 834, 835, (1931) (quoting *United Fuel Gas Co. v. Public Service Commission*, 73 W.Va. 571, 578, 80 S.E. 931, 934 (1914)).

> By the plain terms of the constitution, appellate jurisdiction is limited to controversies arising in *judicial proceedings*, and the 'other appellate jurisdiction' that may be authorized must relate to 'civil and criminal cases,' that is, some judicial proceedings begun in an inferior judicial tribunal. Such is the effect of our decisions. [Emphasis in original].

19. *Dostert, supra* n. 1, 174 W.Va. at 264–265, 324 S.E.2d at 408.

20. *Id.*

21. *See Farley v. Graney*, 146 W.Va. 22, 29–30, 119 S.E.2d 833, 838 (1960).

22. *See Woman's Club of St. Albans v. James*, 158 W.Va. 698, 707–08, 213 S.E.2d 469, 475 (1975).

rights, we retain the prerogative to raise related issues on our own initiative. But *Dostert* was not such a case. We had no right to raise any issues on our own initiative or to offer our advisory opinion on what the law would be upon a hypothetical state of facts because there was no *real* issue in the case to which tangential issues might reasonably relate.

### INSTITUTIONAL CONSIDERATIONS; AVOIDING CONSTITUTIONAL ADJUDICATION

The *Dostert* majority should have avoided the issue of the constitutionality of the judicial retirement system. Even if one could somehow conclude that the *Dostert* issues were technically constitutional, it was clearly indiscrete and gave rise to appearances of impropriety for the Court to interfere with the functions of the legislature in an area where the Court had a pecuniary interest.[23]

Justice Neely, dissenting in *Dostert*, said that his most militant objection to the decision "... can be stated clearly and succinctly: *Nemo debet esse judex in propria causa*"[24] (no man ought to be a judge in his own cause).[25] It is a fundamental rule of constitutional adjudication that constitutional questions are avoided unless absolutely necessary.[26] Knowing of its own self-interest and knowing the importance of the "appearance of justice," the *Dostert* majority should have used good sense and avoided the constitutional question.

Institutional prudence—balancing the desirability of judicial intervention against the devastating institutional and political cost—should have been enough for the Court to have avoided the judicial pension issue in the *Dostert* case. In *Dostert*, where it was unnecessary to even reach the constitutional issue, a "sense of self-restraint" clearly should have been exercised by this Court.[27]

### INSTITUTIONAL CONSIDERATIONS: SEPARATION OF POWERS

Finally, we conclude that the *Dostert* majority had no business intruding into an area committed to the legislative branch of government. Whether it's called "judge made law" or "judicial legislation," the *Dostert* majority had no constitutional power to rewrite the judges' retirement statute. It is a fundamental constitutional law that the power to legislate belongs to the legislature. *W.Va.Const.* art. VI § 1.

> The legislature is the trustee of the state's resources. Courts can no more assume that trusteeship than they could correct legislative impolicy thereon.[28]

The separation of governmental powers through a tripartite allocation of powers in both our state and federal constitutional systems is recognized as " 'one of the chief merits' of the American system of written constitutions and ... [it is] essential to the successful working of the system 'that the persons intrusted with power in any one of these branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other.' "[29]

It is for these reasons that we now strike the fatal blow to the judicial retirement system written by the Court in *Dostert* and *DePond*. As the effacers of our past mistakes, we neither point a finger nor claim

**23.** *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825–26, 106 S.Ct. 1580, 1587–88, 89 L.Ed.2d 823 (1986).

**24.** *Dostert, supra* n. 1 (Neely, J., dissenting), 174 W.Va. at 285, 324 S.E.2d at 429.

**25.** *Black's Law Dictionary*, 1037 (6th ed. 1990).

**26.** As Justice Frankfurter admonished: "[T]he most fundamental principle of constitutional adjudication is not to face constitutional questions but to avoid them, if at all possible." *Unit-*

*ed States v. Lovett*, 328 U.S. 303, 320, 66 S.Ct. 1073, 1081, 90 L.Ed. 1252 (1946) (Frankfurter, J., concurring.)

**27.** *See United States v. Butler*, 297 U.S. 1, 79, 56 S.Ct. 312, 325, 80 L.Ed. 477 (1936) (Stone, J., dissenting.)

**28.** *Hodges, supra* n. 18, 110 W.Va. at 657, 159 S.E. at 838.

**29.** *Id.* (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 190–1, 26 L.Ed. 377 (1880)).

credit. Justice Neely dissented in *Dostert*, Justice Brotherton dissented in *DePond*, and Circuit Court Judge Steptoe, sitting on a special panel in *Oakley*, dissented. Except for these judges, and one or two others, we acted more like children in a candy store than responsible public officials. Most judges planned to accept the new liberal retirements benefits, if needed,[30] and most remained quiet while the public and the media condemned the decision.

We regret this chapter in our history. The people of West Virginia have been very good to their judiciary. Judges earn an income that is six times greater than the income of the average wage earner in West Virginia. Judges who qualify for the judicial retirement system are paid seventy-five percent of their judicial salary. Justices have twelve year terms and Judges need to run for reelection only every eight years. The *Dostert* decision was "a violation of the trust reposed in us by the people of the State of West Virginia. This case [*Dostert*] has no place in the jurisprudence of our State or our nation." [31] Those words of Justice Brotherton, in his dissenting opinion in *DePond*, are now set forth as the conclusions of this Court.

Justice Miller, in his concurring opinion in *DePond*, expressed concern over the retroactivity problems caused when the Court changes the direction of the law.[32] In response to those concerns, we note that *W.Va.Code*, 51–9–3 [1987], requires the state auditor to refund with interest all payments made by judges for credited service under the *Dostert* decision. In addition, the widows of Judges DePond and Kingdon now qualify for annuities under *W.Va.Code*, 51–9–6b [1987]. There is a gap between the time the two widows started receiving an annuity pursuant to the *Dostert* rules and the start of the annuity created by the legislature in 1987. After considering the reliance factors argument advanced by Justice Miller in his con-

curring opinion in *DePond*, we agree that it would be callous and unconscionable to require Mrs. DePond and Mrs. Kingdon to pay back the benefits received during that relatively short period.

Regrettably, the same reliance argument does not apply to Justice Harshbarger. The appellee contends that it is patently unfair and a denial of due process to deny him his benefits when the widows of other Judges "in an identical situation" are receiving pension payments. But it is obvious that the situations are not identical.

The difference between Justice Harshbarger's situation and that of the widows is that Justice Harshbarger was a member of the *Dostert* Court while Mrs. DePond and Mrs. Kingdon were innocent bystanders who happened to benefit by the Court's decision. Justice Harshbarger, as a participant in the Court's decision that made him eligible for a pension for which he was not otherwise qualified, had a direct stake in the outcome of the case. Justice Harshbarger cannot place any faith in or rely on a pension that was created by his own act. We are satisfied that it would be contrary to established law to permit Justice Harshbarger to receive a judicial pension at this time.

We note that Justice Harshbarger is a member of the judges' retirement system and prior to his retirement, could have elected to enroll in the public employees retirement system. *See W.Va.Code*, 5–10–17 [1985] (defining the requirements for membership in the public employees retirement system). Because of the confusion surrounding the *Dostert* decision, this Court finds that it would be inequitable not to allow Justice Harshbarger to transfer his membership from the judges' retirement system to the public employees retirement system. We hold that the transfer of membership from the judges' retirement system to the public employees retirement system is limited to the special circum-

---

**30.** The West Virginia Judicial Association filed an *amicus curiae* brief in *DePond* in support of Mrs. DePond.

**31.** *DePond, supra* n. 3 (Brotherton, J., dissenting), 177 W.Va. at 215, 351 S.E.2d at 401.

**32.** *DePond, supra* n. 3 (Miller, C.J., concurring), 177 W.Va. at 215, 351 S.E.2d at 401.

stances of this case and must be exercised within thirty days of this opinion.

In accordance with the foregoing, the judgment of the Circuit Court of Kanawha County is reversed, and judgment is entered for appellant in this Court. However, because of the extraordinary confusion caused by *Dostert* from the time that case was filed until today, it is further ordered, adjudged and decreed that notwithstanding any other provision of law, appellee Justice Harshbarger shall be permitted to resign from the judicial retirement system and, within thirty days from the entry of the order in this case, join the public employees retirement system under terms and conditions, and receive such benefits, past and future, as would have been applicable had he elected to join said system in a timely fashion at the conclusion of his term in 1984.

Reversed. Judgment entered in this Court.

MILLER, McHUGH and WORKMAN, JJ., deeming themselves disqualified, did not participate in the consideration or decision of this case.

CAPLAN, C.J. (retired), was recalled to active service, and STEPHENS and WILSON, Circuit Judges, sat by designation.

STEPHENS, Circuit Judge, concurring:

Although I do not agree with all the majority's reasons, I concur in the result because Justice Harshbarger should not benefit from his participation in *In re Dostert,* 174 W.Va. 258, 324 S.E.2d 402 (1984). *Dostert* liberalized the judicial pension's eligibility requirements, thereby making Justice Harshbarger eligible for a pension for which he could not otherwise qualify. I agree with the majority that "Justice Harshbarger cannot place any faith in, or rely on a pension that was created by his own act." *Majority opinion supra* at 661, 403 S.E.2d at 404. Stated more plainly, "no man ought to be a judge in his own cause." *Id.* at 660, 403 S.E.2d at 402, 403. But for Justice Harshbarger's participation, I would have been persuaded otherwise.

Justice Harshbarger's participation in *Dostert* makes his case philosophically and factually different from *Oakley v. Gainer,* 175 W.Va. 115, 331 S.E.2d 846 (1985) and *DePond v. Gainer,* 177 W.Va. 173, 351 S.E.2d 358 (1986)—a distinction that the majority fails to appreciate. In *Oakley* and *DePond,* the widows of Judge Arthur R. Kingdon and Judge Frank J. DePond, relied on what they thought the law was at that particular time and had no involvement in the *Dostert* decision. Thus the distinguishing factor between Justice Harshbarger and the widows is *reliance.* *See DePond, supra,* 177 W.Va. at 217–18, 351 S.E.2d at 403–04 (Miller, J., concurring).

In failing to base its decision on Justice Harshbarger's participation, the majority abandons the doctrine of *stare decisis* as if adherence to precedent has little value in our system of jurisprudence. However the principle of *stare decisis* is firmly rooted in our jurisprudence. Although "the principle of *stare decisis* admits of exception," we have long required that "deviation from its application should not occur absent some urgent and compelling reason." *Dailey v. Bechtel Corp.,* 157 W.Va. 1023, 1029, 207 S.E.2d 169, 173 (1974). *See Adkins v. St. Francis Hospital of Charleston, W.Va.,* 149 W.Va. 705, 718, 143 S.E.2d 154, 162 (1965).

The adherence to precedent is particularly important in areas of property interest, such as entitlement to judicial retirement benefits. This Court recognized the need for reliance and certainty concerning property interests, when we said: "Predictability is at the heart of the doctrine of *stare decisis,* and regardless of what we think of the merits of this case, we must be true to a reasonable interpretation of prior law in the area of property where certainty above all else is the preeminent compelling public policy to be served." *Hock v. City of Morgantown,* 162 W.Va. 853, 856, 253 S.E.2d 386, 388 (1979); *see also Signaigo v. N & W Ry. Co.,* 171 W.Va. 547, 301 S.E.2d 178, 181–82 (1982).

The widows in *Oakley* and *DePond,* along with others who did not participate in

*Dostert,* relied on the pension benefits that *Dostert* made available. The majority's chastisement of the judiciary, except for the righteous few it mentioned, for a lack of courage in failing to strike a fatal blow against the *Dostert* retirement system, fails again to recognize the judiciary's awareness of the principle of *stare decisis.* Although the majority attempts to show that *Dostert* was based on serious judicial error, most of the members of the judiciary were unaware of any error and relied on *Dostert,* and its progeny—*Oakley* and *DePond.* This Court in *Dailey, supra* 157 W.Va. at 1029, 207 S.E.2d at 173, said: "If the doctrine of stare decisis is to play any judicial role ... we cannot overrule a decision so recently rendered without any evidence of changing conditions or serious judicial error." *See Oakley supra* 175 W.Va. at 122, 331 S.E.2d at 854.

Because of the need for certainty with respect to property interests, including entitlement to judicial retirement benefits, the majority should not have overruled *Dostert, Oakley* and *DePond.* The majority could have reached its decision based on Justice Harshbarger's participation and did not need to introduce uncertainty for those who rely on precedent. Whomsoever relied on what they perceived the law to be at that given time, utilized their mature judgment to do so, and *stare decisis* is at least one doctrine that assists one in that reliance.