STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**June 11, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**THE SANITARY BOARD OF THE
CITY OF CHARLESTON, WEST VIRGINIA,**
**Petitioner**

vs)  No. 13-0727 (PSC Nos. 11-1572-S-C and 11-1601-S-C)

**THE PUBLIC SERVICE COMMISSION
OR WEST VIRGINIA, MARY LOU
NEWBERGER AND JAMES McCORMICK,**
**Respondents**

**MEMORANDUM DECISION**

Petitioner, The Sanitary Board of the City of Charleston ("Sanitary Board"), appeals the June 24, 2013, order of the Public Service Commission ("PSC") that required the petitioner to repair a sewer line servicing a number of homeowners along Quarrier Street in the City of Charleston. The Sanitary Board is represented by Grant P.H. Shuman, Lee F. Feinberg and Susan J. Riggs of Spilman Thomas & Battle, PLLC. Respondent PSC is represented by John D. Little, Carolyn Watson Short and Richard E. Hitt. Respondent Mary Lou Newberger ("Ms. Newberger") is represented by William S. Winfrey, II.[1]

The Court has considered the parties' briefs and the record on appeal as well as their oral argument. The facts and arguments are adequately presented. Upon consideration of the standard of review, the briefs and the record on appeal, the Court finds no substantial question of law exists. Furthermore, the Court finds that under the circumstances unique to this appeal and inasmuch as the petitioner performed all repairs ordered by the PSC in its June 24, 2013, order, this matter should be dismissed as being moot. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] This Court acknowledges the contributions of Amicus Curiae, West Virginia Municipal Water Quality Association and its counsel, F. Paul Calamita, who filed a brief in this matter.

1

This case arises from a sinkhole that appeared in front of the Quarrier Street home owned by Ms. Newberger.[2] The sinkhole was estimated by Ms. Newberger to be at least ten feet in depth. At the bottom of this sinkhole Ms. Newberger saw a large broken pipe from which water was flowing. Ms. Newberger contacted the Sanitary Board, who confirmed that this was a sewer line. The Sanitary Board initially told Ms. Newberger that it would repair the line. After further investigation, however, the Sanitary Board refused to make the repairs, relying upon a 1906 agreement among several residents of this area, including Ms. Newberger's predecessor in title, that created a private sewer for the use of these residents.[3] The Sanitary Board told Ms. Newberger that since this was a private sewer line, not a public sewer line for which the Sanitary Board was responsible, she would have to pay for these repairs.

Ms. Newberger filed a complaint with the PSC against the Sanitary Board, seeking an order that the Sanitary Board repair this line. The Sanitary Board relied upon the 1906 agreement in defense of the complaint. The Sanitary Board contended that the PSC was without jurisdiction to adjudicate the rights, responsibilities and obligations created by the 1906 agreement. Mr. McCormick filed a similar complaint against the Sanitary Board after Ms. Newberger's complaint was instituted. The PSC investigated the complaint and argued that the 1906 agreement contravened the regulatory authority of the PSC and should not act as a bar to having the Sanitary Board make the repairs. The case was assigned to an administrative law judge, who held a hearing and recommended that that the Sanitary Board be required to repair the entire line, determine how many sewer customers were served by this line and to obtain ownership of this line. The Sanitary Board filed objections to this recommended decision.

The PSC urged the parties to resolve this dispute through mediation and entered several orders requiring the Sanitary Board to provide additional information.[4] Mediation was not successful.

---

[2] The property owned by Ms. Newberger is a duplex. The owner of the other half of the duplex is respondent James McCormick, who did not participate in this appeal.

[3] It is undisputed that this agreement was duly recorded in the Office of the Clerk of the County Commission of Kanawha County. This agreement also predates the existence of the Sanitary Board and the creation of the PSC.

[4] One of the PSC's requests was for the Sanitary Board to provide a map of the sewer customers served by this line and identify the existence of sewer mains on Shelton Avenue and Beauregard Street.

By order entered June 24, 2013, the PSC ordered that the Sanitary Board repair the sinkhole in front of Ms. Newberger's residence and repair the broken sewer line serving the duplex owned by her and Mr. McCormick. The PSC did not order that the Sanitary Board assume ownership of the sewer line or repair the entire line, as the administrative law judge had recommended. The Sanitary Board filed a motion to reconsider this order before the PSC. The motion to reconsider was denied. The Sanitary Board performed the required repairs and filed an appeal of the PSC ruling on July 25, 2013.

Despite the fact that the requested repairs have been made, the petitioner and amicus curiae urge this Court to answer the question of whether the PSC has jurisdiction to interpret and determine the rights, responsibilities and obligations of the Sanitary Board and the property owners associated with the 1906 agreement. Based upon the circumstances unique to this case and because the repairs have been made, there is no genuine controversy pending before this Court. This Court is not in the practice of rendering advisory opinions.

> "Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes . . . ." Syl. pt. 2, in part, *Harshbarger v. Gainer*, 184 W.Va. 656, 403 S.E.2d 399 (1991). *Accord State ex rel. ACF Indus., Inc. v. Vieweg*, 204 W.Va. 525, 533 n. 13, 514 S.E.2d 176, 184 n. 13 (1999) ("[T]his Court cannot issue an advisory opinion with respect to a hypothetical controversy."); *Farley v. Graney*, 146 W.Va. 22, 29–30, 119 S.E.2d 833, 838 (1960) ("[C]ourts will not . . . adjudicate rights which are merely contingent or dependent upon contingent events, as distinguished from actual controversies. . . Nor will courts resolve mere academic disputes or moot questions or render mere advisory opinions which are unrelated to actual controversies." (citations omitted)).

*Huston v. Mercedes-Benz USA, LLC*, 727 W. Va. 515, 523-524, 711 S.E.2d 585, 593-594 (2011). Consequently, in dismissing this matter as moot, we underscore that we are not reaching the merits of the underlying matter, nor are we expressing our opinion on the law applicable to such matter.

It is therefore ordered that this matter be, and hereby is, dismissed from the docket of this Court.

Dismissed.

3

**ISSUED:** June 11, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman

**DISSENTED IN BY:**

Justice Menis E. Ketchum
Justice Allen H. Loughry II

No. 13-0727 – *Sanitary Board of Charleston v. Public Service Commission*

Justice Ketchum, with whom Justice Loughry joins, dissenting:

Although the issue in this case is technically moot I believe we should have addressed the merits of the case. It presents an issue of great public interest that will be repeated in the future. The Public Service Commission (PSC) ruling will have a large financial future impact on West Virginia's sanitary boards and municipalities. Our cases are clear that we may address technically moot issues when they involve questions of great public interest for the future guidance of the public. *Israel v. Secondary Schs. Activities Comm.*, 182 W.Va. 454, 388 S.E.2d 480 (1981).

This case involves a shared private sewer line constructed 70 years before the 1977 promulgation of the Rules for the Government of Sewer Utilities, C.S.R. § 150-5-1 et seq., and prior to the existence of the Sanitary Board of the City of Charleston (CSB). The private customer sewer line was constructed in the early 1900's and connected to the city's sewer main by previous owners of the properties now owned by Mary Lou Newberger and James McCormick (the "Complainants"). Sixteen properties share the private sewer line.

In 1906, the Complainants' predecessors-in-interest entered into an agreement for an easement, stating that the shared customer sewer line "shall be maintained at the common expense of the several properties through which the same runs." This easement specifies that "all provisions of this agreement shall constitute and remain covenants running with the land, as to the several lots . . . mentioned and binding upon the present and all future owners thereof." However, when a leak occurred in the private line and a sinkhole developed, Complainants did not repair the line as mandated by the 1906 agreement. Instead, they requested that CSB repair

5

the line. CSB properly declined because it is a private line and one that is subject to a private repair agreement. Ultimately, complainants filed a Complaint in 2011 against CSB with the PSC.

On July 24, 2012, PSC staff issued a Recommended Decision that CSB must acquire ownership of the private sewer line serving the homes of the Complainants. CSB filed Exceptions to the Recommended Decision. On June 24, 2013, the PSC issued an Order modifying the Recommended Decision and only ordered CSB to repair the private sewer line serving Complaints' homes.

The PSC ruling makes a public utility responsible for any problems with certain private sewer lines. This ruling sets up a precedent requiring public utilities to repair and maintain homeowners' non-conforming private sewer lines. Owners of non-conforming shared private sewer lines will enjoy having the public utility maintain their lines. Conversely, the utility's other customers will, in effect, pay to repair the private line.

The shared private line here is not owned, operated, or maintained by CSB, but rather is the private property of Complainants. CSB has played no role in its operation and maintenance in the more than 100 years since the private line was installed. The line runs entirely over private property. Because it was installed at the customers' expense, the line also is not a utility service line which is "that portion of the service pipe between the sewer main and the point of service, installed at the cost and expense of the utility." C.S.R. § 150-5-1.7. p. The shared line is a private sewer line and not the property of CSB.

6

Both the PSC's regulations and the 1906 private sewer line maintenance agreement between Complainants' predecessors-in-interest make clear that CBS is in no way responsible for maintaining or repairing the Complainant's private sewer lines.

Because the line at issue is a private customer service pipe, the Rules for the Government of Sewer Utilities explicitly place responsibility on the customer, rather than the utility, for connecting to the utility's sewer main and maintaining the customer service pipe. C.S.R. § 150-5-5.3.b. The PSC's regulations require that, "[a] customer must maintain his service pipe in good condition and free from all leaks and defects, at the customer's cost and expense." C.S.R. § 150-5-5.3.g.

After the PSC issued the order the CSB voluntarily fixed the line and sinkhole. However, the CSB continued to appeal the PSC ruling.

We should have addressed the issue to provide guidance upon this important public issue. In my opinion, no law or PSC regulation makes a sewer board responsible for private sewer lines that connect to the public sewer main.

Therefore, I dissent.