**FILED**
**October 23, 2023**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Mark A. Hinson,**
**Claimant Below, Petitioner**

**vs.)**    No. 22-0120    (BOR Appeal No. 2057181)
(JCN:  2014004605)

**Chicago Bridge & Iron Company,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Mark A. Hinson appeals the January 21, 2022, order of the West Virginia Workers' Compensation Board of Review ("Board of Review"), affirming the July 9, 2021, decision of the Workers' Compensation Office of Judges ("Office of Judges") affirming a July 27, 2020, claims administrator order. The claims administrator granted the claimant a 13% permanent partial disability award. Chicago Bridge & Iron Company filed a timely response.[1] The issue presented on appeal is the amount of permanent partial disability benefits in the claim. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the Board of Review is appropriate. *See* W. Va. R. App. P. 21.

As a pipefitter for Chicago Bridge & Iron Company, Mark A. Hinson was injured on March 7, 2013, while changing gaskets on flanges, which required the removal of nuts with a thirty-two-inch, fifteen pound wrench. The claim was eventually held compensable for left rotator cuff tear and cervical sprain/strain.[2] Mr. Hinson continued to work after the March 7, 2013, injury and began working for another employer. He stopped working around July of 2014.

---

[1]Petitioner Mark A. Hinson is represented by Patrick K. Maroney, and Chicago Bridge & Iron Company is represented by Maureen Kowalski.

[2]Mr. Hinson's claim was held compensable for left rotator cuff tear and cervical sprain/strain by this Court in a memorandum decision dated December 7, 2019.

1

Mr. Hinson was evaluated by Paul Bachwitt, M.D., on November 13, 2019. Dr. Bachwitt found that he still had pain and limitation of motion of the left shoulder. Mr. Hinson expressed that he wanted his shoulder surgery bill paid and his travel expenses reimbursed. Dr. Bachwitt found atrophy and limitation of motion in the left shoulder. He also noted neck pain, limited motion, and possible C6-C7 radiculopathy on the left. Dr. Bachwitt found him to be at his maximum degree of medical improvement for his left shoulder. Dr. Bachwitt found that Mr. Hinson had not reached maximum medical improvement for his cervical spine injury. Dr. Bachwitt opined that Mr. Hinson needed a thorough evaluation by a neurosurgeon and possible injections for his cervical spine. Dr. Bachwitt stated that Mr. Hinson most likely aggravated the degenerative disc disease of the cervical spine while using his left arm to torque bolts with a large wrench. Dr. Bachwitt did not believe that Mr. Hinson could return to work until a formal neurosurgical treatment was completed, and he found 7% whole person impairment for the left shoulder based upon Figures 38, 41, and 44 of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("AMA *Guides*").

Mr. Hinson underwent an independent medical evaluation with Marsha Bailey, M.D., on June 25, 2020. Dr. Bailey opined that he had the diagnosis of chronic cervical pain with perhaps a mild left upper extremity cervical radiculitis expressed as numbness in the tip of his left thumb. Dr. Bailey was surprised by the bilaterality of Mr. Hinson's shoulder complaints because he reported pain on palpation of his uninjured right shoulder. His uninjured right shoulder range of motion measurements were pain restricted like his left shoulder range of motion measurements. Dr. Bailey stated that a reasonable person may conclude that at least a portion of Mr. Hinson's chronic left shoulder complaints were a result of the same nonoccupational conditions which caused pain and limited range of motion in his uninjured right shoulder. Dr. Bailey opined that Mr. Hinson reached his maximum medical improvement long ago, and no further treatment of any kind is necessary to treat the injuries sustained on March 7, 2013. Using the AMA *Guides*, Dr. Bailey placed Mr. Hinson in Category IIC of Table 75 for 6% impairment. No impairment was found for range of motion since all the movements were pain restricted. Dr. Bailey placed Mr. Hinson in Cervical Category II of West Virginia Code of State Rules § 85-20-E for 6% impairment for his cervical spine, which she apportioned entirely to preexisting conditions. She calculated a total of 7% whole person impairment for the left shoulder. When Dr. Bailey compared the left with the right, which had 4% impairment, she apportioned and found 3% for the left shoulder.

In an order dated July 27, 2020, the claims administrator granted Mr. Hinson a 13% permanent partial disability award based upon Dr. Bailey's report. The award consisted of 6% permanent partial disability for the cervical spine, and 7% for the left shoulder, for a total of 13% permanent partial disability.[3] Mr. Hinson protested the claims administrator's order.

---

[3]The claimant was granted 7% disability for his injured shoulder based upon the findings of Dr. Bachwitt, and he was granted 6% disability for his cervical spine injury based upon the rating of Dr. Bailey. Although the claims administrator granted the claimant 6% impairment for the cervical spine, Dr. Bailey apportioned the entire amount of the claimant's impairment to noncompensable preexisting conditions, with no impairment related to the injury to the cervical

2

In support of his protest, Mr. Hinson submitted a deposition transcript dated September 24, 2020. He stated the last doctor he saw for his injury was Dr. Boyd, whom he saw on November 21, 2019. Mr. Hinson testified that he had not seen another doctor for an impairment rating other than Dr. Bachwitt and Dr. Bailey. He testified that he had doctor bills that had not been paid. As a result of his unpaid bills, he was not able to receive authorization for an MRI. Mr. Hinson testified that he continues to have pain from his injury. Although he can take trash outside, he expressed that he ends up "paying for it" due to pain.

In a decision dated July 9, 2021, the Office of Judges affirmed the claims administrator's July 27, 2020, order granting Mr. Hinson a 13% permanent partial disability award. The Office of Judges noted that the report of Dr. Bachwitt dated November 13, 2019, found 7% whole person impairment for the injured shoulder. However, Dr. Bachwitt felt that Mr. Hinson was not at maximum medical improvement for the cervical spine. In her report dated June 25, 2020, Dr. Bailey concluded that Mr. Hinson was at maximum medical improvement for his cervical spine injury. In all, Dr. Bailey found 6% impairment. However, she apportioned the impairment entirely to preexisting conditions with no impairment related to the cervical spine injury. The Office of Judges concluded that Mr. Hinson had not submitted evidence of greater permanent disability in the claim. On January 21, 2022, the Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its decision.

This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review, and when the Board's decision affirms prior rulings by both the Workers' Compensation Commission and the Office of Judges, we may reverse or modify that decision only if it is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is based upon a material misstatement or mischaracterization of the evidentiary record. *See* W. Va. Code §§ 23-5-15(c) & (d). We apply a de novo standard of review to questions of law. *See Justice v. W. Va. Off. of Ins. Comm'n*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Dr. Bachwitt and Dr. Bailey are the two physicians relied upon by the claims administrator for permanent partial disability determination. Dr. Bachwitt opined that Mr. Hinson had reached maximum medical improvement for his left shoulder but not for his cervical injury, and he opined 7% impairment for the left shoulder injury. Several months after Dr. Bachwitt's assessment, Dr. Bailey opined that Mr. Hinson had reached maximum medical improvement for both his left shoulder and cervical injury. For the cervical injury, Dr. Bailey calculated 6% impairment, which she apportioned due to Mr. Hinson's compensable degenerative disc disease. In explaining her apportionment, Dr. Bailey stated that an MRI obtained on July 25, 2014, revealed rather advanced cervical spine degenerative changes. The claims administrator

---

spine. It appears that the claims administrator overpaid the 6% permanent partial disability to the claimant in this claim; however, the employer argued on appeal that the July 27, 2020, order should be affirmed.

awarded Mr. Hinson a 13% permanent partial disability award, with 6% for his cervical injury and 7% for his shoulder injury, based upon the opinions of Drs. Bachwitt and Bailey.

On appeal, Mr. Hinson argues that the lower tribunals should only reduce preexisting conditions through apportionment when there is a prior ascertainable impairment, and he asserts that he is "entitled to the totality of the 13% permanent partial disability as determined by Dr. Bailey without the 13% being reduced since there has been no ascertainable pre-existing impairment determined in an amount certain nor did these pre-existing conditions prevent the claimant from working or affected his activities of daily activity." It appears that the claimant is requesting that this Court grant him a 13% permanent partial disability award, which is the amount of his current award that he is simultaneously asking to be reversed on appeal.[4] Nonetheless, Mr. Hinson did not offer any medical evidence into the record disputing the impairment ratings of Drs. Bachwitt and Bailey. As noted by the Board of Review, Mr. Hinson has been granted 6% for the cervical spine and 7% for the shoulder, which are the impairment ratings prior to apportionment, for a total of 13% permanent partial disability. As such, the Board of Review's order is affirmed.

Affirmed.

**ISSUED:** October 23, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

**DISSENTING:**

Justice C. Haley Bunn

BUNN, Justice, dissenting:

I dissent to the majority's resolution of this case. I would have dismissed the case for lack of jurisdiction. As the memorandum decision is written, the majority affirms a Board of Review determination in a matter where Petitioner seeks relief that he has already been granted, and the Respondent agrees with the outcome. The majority states that "[i]t appears that the claimant is

---

[4]The employer reasons that the claimant is seeking the amount requested in the event that the claims administrator asserts that an overpayment has been made in the claim. As no such order exists, Mr. Hinson's argument, if this is the reason for the appeal, is premature. If the claims administrator does issue such an order in the future, he will have a full opportunity to protest such an order and litigate the overpayment issue.

4

requesting that this Court grant him a 13% permanent partial disability award, which is the amount of his current award that he is simultaneously asking to be reversed on appeal." This is not a justiciable case or controversy. Syl. pt. 2, *Harshbarger v. Gainer*, 184 W. Va. 656, 403 S.E.2d 399 (1991) ("'Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other before jurisdiction of a suit may be taken.' *Mainella v. Board of Trustees of Policemen's Pension or Relief Fund of City of Fairmont*, 126 W. Va. 183, 185-86, 27 S.E.2d 486, 487-88 (1943)."). Accordingly, I respectfully dissent from the Court's decision to address this case on its merits.