IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

_____

No. 18-0182

_____

FILED
**March 15, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CITY OF MARTINSBURG, WEST VIRGINIA,
Defendant below, Petitioner

v.

THE BERKELEY COUNTY COUNCIL and
THE BERKELEY COUNTY BUILDING COMMISSION
Plaintiffs below, Respondents

_____

Appeal from the Circuit Court of Berkeley County
The Honorable Christopher C. Wilkes, Judge
Case No. 17-C-461

ORDER VACATED
_____

Submitted: February 13, 2019
Filed: March 15, 2019

Floyd McKinley Sayre, III, Esq.
J. Tyler Mayhew, Esq.
BOWLES RICE LLP
Martinsburg, West Virginia
Counsel for Petitioner

Christopher C. Luttrell, Esq.
Luttrell LC
Martinsburg, West Virginia
Counsel for Respondents

Jerome Radosh
Martinsburg, West Virginia
Amicus Curiae
Pro Se

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "A circuit court's entry of a declaratory judgment is reviewed *de novo*." Syllabus Point 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995).

2.      "In deciding whether a justiciable controversy exists sufficient to confer jurisdiction for purposes of the Uniform Declaratory Judgment Act, West Virginia Code §§ 55–13–1 to –16 (1994), a circuit court should consider the following four factors in ascertaining whether a declaratory judgment action should be heard: (1) whether the claim involves uncertain and contingent events that may not occur at all; (2) whether the claim is dependent upon the facts; (3) whether there is adverseness among the parties; and (4) whether the sought after declaration would be of practical assistance in setting the underlying controversy to rest." Syllabus Point 4, *Hustead on Behalf of Adkins v. Ashland Oil, Inc.*, 197 W. Va. 55, 475 S.E.2d 55 (1996).

WALKER, Chief Justice:

The Berkeley County Council and the Berkeley County Building Commission (County) filed suit against the City of Martinsburg (City) seeking a ruling that real property owned by the County but located within the City limits is not subject to the City's zoning ordinances. Problematically, the complaint reveals no actual, justiciable controversy. There is no specific project, building or property identified by the County; rather, the suit purports to apply generally and prospectively to all real property owned by the County that may be involved in future but unspecified projects. Under these circumstances, the circuit court engaged in an academic exercise, and its order amounts to an advisory opinion that has little practical use to the parties in the resolution of any dispute that may arise if, and when, a project is undertaken by the County. Lacking a justiciable controversy, the underlying complaint for declaratory relief was insufficient to confer jurisdiction upon the circuit court under the Uniform Declaratory Judgements Act, and the resulting order granting declaratory relief must be vacated.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The County filed suit in the Circuit Court of Berkeley County against the City seeking declaratory judgment that various properties located within the City limits, but owned by the County, are not subject to the City's zoning ordinances. The complaint

---

[1] We acknowledge the Amicus Curiae brief filed by Jerome Radosh, pro se, in support of affirming the circuit court's decision.

lists twelve properties owned by the Berkeley County Council and six properties owned by the Berkeley County Building Commission (collectively, the County Properties). The County Properties include the Berkeley County Court House, the Berkeley County Judicial Center, the Berkeley County Assessor's Office, the Berkeley County Sheriff's Department, P.O. Faulkner Park, and other public buildings. At oral argument, counsel for the County indicated that, to his knowledge, the complaint lists all of the properties owned by Berkeley County located within the City's limits.

The County's complaint contended that West Virginia Code §§ 7-3-1,[2] -2,[3] -5,[4] and -7[5] support its position that the County has the specific authority, unrestricted by

[2] In relevant part, West Virginia Code § 7-3-1 provides:

[n]o words in any devise or conveyance of real estate to a county, or the county court [county commission] thereof, or in any contract for the conveyance of real estate to a county or the county court thereof, expressing the purpose for which such real estate is devised, conveyed or sold, or is to be used, shall limit or impair the power of such county court to dispose thereof absolutely or use the same for another purpose, unless it be expressly declared in such instrument that whenever the said real estate shall cease to be used for the purpose, or in the manner therein specified, it shall revert to the former owner, his heirs or assigns.

[3] West Virginia Code § 7-3-2 provides, in pertinent part,

[t]he county commission may also provide other necessary offices and buildings, and may, by purchase or otherwise, acquire as much land as may be requisite or desirable for county purposes, and may suitably enclose, improve and embellish the lands so acquired.

Subject to the conditions hereinabove set forth with respect to the site of the courthouse, jail, and other offices, the commission may, from time to time, as may seem to it proper, provide, at the expense of the county, a new or other building or buildings to be used for the courthouse and jail, or for either, together with suitable offices, as aforesaid, and for that purpose may acquire, by purchase or otherwise, and hold any lands, or lands and buildings, which may be necessary, and may enclose, improve and embellish the same.

[4] In relevant part, West Virginia Code § 7-3-5 provides that

[t]he county commission of any county is hereby authorized and empowered to acquire real estate and to convey real estate and to enter into a contract, or lease, or both, with the United States government, or any federal agency authorized to make or enter into a contract, or lease, or with any bank or financial institution, or with any individual or persons for the erection, construction, equipment, leasing, and renting of a courthouse, hospital, other public buildings, or jail[.]

3

the Legislature, to purchase property used for courthouses, hospitals, jails and other public buildings, and therefore the County Properties are not subject to city ordinances that may restrict the type or location of those public buildings in the county seat. The County then alleges that the City had previously contended that the County Properties, including those used for a courthouse, hospital, other public building, or jail are subject to its zoning ordinances. Consequently, the County sought a declaratory judgment that the County Properties were not subject to the City of Martinsburg's zoning ordinances.

The City filed a motion to dismiss or for summary judgment, contending that its authority to enact land use regulations extends to all land within its jurisdiction pursuant to West Virginia Code § 8A-7-1(a)(3), and, that under West Virginia Code § 8A-10-3(a), the enacting body may enjoin "a person or a unit of government" from violating the enacted land use ordinances. A "unit of government" as defined in § 8A includes "any federal, state, regional, county or municipal government or governmental agency."[6] So, the City

_____

[5] In relevant part, West Virginia Code § 7-3-7 provides that "[a]ny county commission is likewise authorized and empowered to acquire real estate for, construct, equip, furnish and maintain a courthouse, hospital or other public buildings or jail[.]"

[6] We note that the parties also disagreed below as to whether this Court's decision in *City of Charleston v. Southeastern Const. Co.*, 134 W. Va. 666, 64 S.E.2d 676 (1950) is applicable to this case. In *City of Charleston*, we examined the countervailing interests of the State versus the authority of the City of Charleston to regulate land use within city limits. We held that the subject state-owned property was not subject to the city's ordinances as a matter of constitutional concern, and, in doing so, held that the word "person" in a statute, in the absence of an express provision contrariwise, does not include a State agency or a public corporation. Of course, the definition here does include "a unit of government," and would also require an analysis of the relationship between county and

4

argues that the Legislature intended that county-owned properties would be subject to city ordinances. That is, the City contends that although Chapter 7, Article 3 of the West Virginia Code empowers a county to acquire property, that property is equally subject to city zoning ordinances under West Virginia Code § 8A-7-1(a)(3). Finally, the City argues that the declaration sought by Berkeley County would, in practice, apply to all county-owned property, not just those designated for a courthouse, jail, or hospital due to the broad "other public buildings" language included in statutes at issue.

In response, the County reiterates the arguments made in the complaint to the effect that the City's ordinances could not be applied to the County-owned property used for the County's courthouse, hospital, jail or other public buildings consistent with the provisions contained in Chapter 7, Article 3 of the West Virginia Code. The County further argues that West Virginia Code § 8A-7-2, which lists the appropriate subjects for zoning, does not include regulation of government-owned property.

The circuit court denied the City's motion, and granted summary judgment in favor of the County, agreeing that "the City has no inherent power to adopt a zoning ordinance that affects the properties of governmental entities, and that it is well-established law in West Virginia that the County is afforded the power to purchase or lease real estate

city, as opposed to city and state. But, we need not reach that issue because we do not rule on the merits of the underlying appeal.

5

for the purpose of constructing or maintaining a courthouse, hospitals, jails, and other public buildings." This appeal followed.

## II. STANDARD OF REVIEW

Petitioner appeals from a grant of summary judgment that resulted in entry of a declaratory judgment. Accordingly, our review is de novo: "A circuit court's entry of a declaratory judgment is reviewed *de novo*."[7]

## III. DISCUSSION

As an initial matter, the parties do not raise here, nor did they raise below, whether the County's declaratory judgment action implicates an actual, justiciable controversy.[8] But, insofar as the presence of a justiciable controversy in the declaratory judgment context is a matter of jurisdictional authority,[9] we consider it sua sponte.

---

[7] Syl. Pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995).

[8] The City argued below that the County did not have standing because the complaint did not allege damage, which the circuit court analyzed using some authority relating to justiciability. But, we find that analysis irrelevant to examining whether an actual controversy exists.

[9] *See* Syl. Pt. 4, *Hustead on Behalf of Adkins v. Ashland Oil, Inc.*, 197 W. Va. 55, 475 S.E.2d 55 (1996) (enumerating factors for consideration to determine if justiciable controversy exists sufficient to confer jurisdiction under Uniform Declaratory Judgments Act).

In *West Virginia Utility Contractors Association v. Laidley Field Athletic and Recreational Center Governing Board*,[10] this Court outlined the basic requirement of justiciability, consisting of a legal right claimed by one party and denied by the other:

> "While the Uniform Declaratory Judgments Act, W. Va. Code, 55-13-1 *et seq.* (1941) does not expressly require a justiciable controversy as a condition precedent to its application, we have held that the issue to be determined must be potentially justiciable at some future time when the things sought to be avoided by the declaratory judgment action will have occurred. *Robertson v. Hatcher*, 148 W.Va. 239, 135 S.E.2d 675 (1964). Simply stated, for the purposes of a declaratory judgment action, a justiciable controversy exists when a legal right is claimed by one party and denied by another."[11]

Later, in *Hustead on Behalf of Adkins v. Ashland Oil, Inc.*,[12] we confirmed the need for an actual, existing controversy:

> [b]efore a circuit court can grant declaratory relief pursuant to the provisions of the Uniform Declaratory Judgment Act ("Act"), West Virginia Code §§ 55-13-1 to -16 (1994), there must be an actual, existing controversy. *See Cox v. Amick*, 195 W.Va. 608, 618, 466 S.E.2d 459, 469 (1995) (Cleckley, J., concurring); *Mongold v. Mayle*, 192 W.Va. 353, 358, 452 S.E.2d 444, 449 (1994). "To be clear, if there is no 'case' in the constitutional sense of the word, then a circuit court lacks the power to issue a declaratory judgment." *Cox*, 195 W.Va. at 618, 466 S.E.2d at 469. The rationale behind the justiciable controversy requirement is that the Act [ ] "is

---

[10] 164 W. Va. 127, 260 S.E.2d 847 (1979).

[11] *Id.* at 131, 260 S.E.2d at 850 (quoting *Trail v. Hawley*, 163 W. Va. 626, 627-28, 259 S.E.2d 423, 425 (1979)).

[12] 197 W. Va. 55, 475 S.E.2d 55.

designed to enable litigants to clarify legal rights and obligations *before* acting upon them." *Id.* (emphasis added).[13]

Expanding on those considerations, in *Hustead* we outlined four factors for circuit courts to consider in this context:

> In deciding whether a justiciable controversy exists sufficient to confer jurisdiction for purposes of the Uniform Declaratory Judgment Act, West Virginia Code §§ 55–13–1 to –16 (1994), a circuit court should consider the following four factors in ascertaining whether a declaratory judgment action should be heard: (1) whether the claim involves uncertain and contingent events that may not occur at all; (2) whether the claim is dependent upon the facts; (3) whether there is adverseness among the parties; and (4) whether the sought after declaration would be of practical assistance in setting the underlying controversy to rest.[14]

Applying that framework to the allegations made in the County's complaint, it is plain to this Court that there is no actual, existing justiciable controversy sufficient to confer jurisdiction under the Declaratory Judgments Act. Specifically, the complaint does not allege any proposed or potential project that might implicate an analysis of the County's apparent authority to acquire real estate as it relates to the City's apparent authority to zone land within its jurisdiction. There has been no legal right claimed by the County to acquire particular real estate for or to construct a particular type of public building—or any building for that matter—and, consequently, there has been no right denied by the City based on

---

[13] *Id.* at 61, 475 S.E.2d at 61.

[14] Syl. Pt. 4, *Hustead*, 197 W. Va. 55, 475 S.E.2d 55.

8

one or more of its zoning ordinances. We are therefore asked to resolve an issue that has not, and indeed may not, ever arise.

We recognize that declaratory judgments provide certainty for parties as to the extent of their legal rights before undertaking enormous expense or legal obligation.[15] But, as we have discussed, "[t]he crux of the actual controversy requirement . . . is that the facts must be known and existing at the time of the filing of a declaratory judgment proceeding[.]"[16] The parties here seek an advisory opinion in the total absence of factual circumstances and real controversy, and ask us to interpret and apply statutes that necessarily require factual inquiry. Further, there is no proposed project apparent from the complaint or the parties' briefs that gives any indication that this declaratory judgment was sought for the purpose of avoiding an expense or undertaking an obligation.

As to the third *Hustead* factor, the parties are undoubtedly adverse, in that they take different legal positions, but that level of adverseness is considerably different from that required in the context of avoiding issuance of advisory opinions. We have discussed that "one problem with 'friendly,' or 'test case' lawsuits is that the nominally

---

[15] *See W. Va. Inv. Management Bd. v. Variable Annuity Life Ins. Co.*, 234 W. Va. 469, 476, 766 S.E.2d 416, 423 (2014) ("Clarification of legal rights and obligations before a party is forced to act upon those rights and obligations is the ideal which the Act seeks to promote. *See Cox v. Amick*, 195 W. Va. 608, 618, 466 S.E.2d 459, 469 (1995) (Cleckley, J., concurring).").

[16] *Id.* (citing *Hustead*, 197 W. Va. at 61-62, 475 S.E.2d at 61-62).

9

adverse parties are not truly at each other's throats. The parties do not have the gut-level adversarial incentive that causes a litigant to bring forward all possibly meritorious arguments that might defeat their opponent's claims."[17] Again, because we have no specific project or ordinance to analyze, there may be additional arguments unknown to the parties specific to a particular project or ordinance that might influence analysis of the parties' competing authority, be it additional statutory or regulatory authority or some matter of balancing public policy interests. For a similar reason, this case does not present an actual, justiciable controversy under the fourth *Hustead* factor. Any opinion rendered by this Court would be a blind reconciliation and application of statutes, and could be wholly inapplicable to a proposed future project, or its intended use, depending on the factual circumstances. For that reason, the sought-after declaration is of little use to settle any potential future dispute even if it were to eventually arise.

To the extent the County seeks to ascertain its legal rights prior to embarking on a project to construct a building for a particular public use in a particular location that could arguably be subject to the City's zoning ordinances, we invite the County to amend its complaint to reflect that. As it stands, however, we are unable to define the County's authority as opposed to the authority of the City because we have no context with which to evaluate the statutes implicated, and are unable to render a judgment capable of resolving

---

[17] *State ex rel. W. Va. Deputy Sheriff's Ass'n, Inc. v. Sims*, 204 W. Va. 442, 446, 513 S.E.2d 669, 673 (1998) (citing *Alsop v. McCartney*, 159 W. Va. 829, 228 S.E.2d 278 (1976)).

such a general and wide-ranging dispute.[18]  As we have long held, "[c]ourts are not constituted for the purpose of making advisory decrees or resolving academic disputes[,]"[19] and we decline to do so here.  Although the question of a justiciable controversy was not raised in this context before the circuit court, we find that the order issued by the circuit court was advisory in that it lacked a justiciable controversy sufficient to confer jurisdiction under the Uniform Declaratory Judgment Act, and, for that reason, must be vacated.

## IV.    CONCLUSION

For the reasons set forth above, we vacate the January 29, 2018 order of the Circuit Court of Berkeley County.

Order vacated.

---

[18] In the meantime, we invite the Legislature to clarify if it intended to elevate either the county's or the city's authority over the other in the context of West Virginia Code Chapter 7, Article 3 and Chapter 8A.

[19] Syl. Pt. 2, in part, *Harshbarger v. Gainer*, 184 W. Va. 656, 403 S.E.2d 399 (1991).

11