IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2019 Term

_____

No. 19-0532

_____

FILED
**November 20, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex. rel. JOHN D. PERDUE,
In his official capacity as STATE TREASURER OF WEST VIRGINIA,
Petitioner

v.

JOHN B. McCUSKEY,
In his official capacity as WEST VIRGINIA STATE AUDITOR,
Respondent

_____

ORIGINAL PROCEEDING IN PROHIBITION

WRIT DENIED

_____

Submitted: October 30, 2019
Filed: November 20, 2019

J. Mark Adkins, Esq.                        Stephen R. Connolly, Esq.
Richard R. Heath, Jr., Esq.                 General Counsel & Deputy State Auditor
Gabriele Wohl, Esq.                         Charleston, West Virginia
BOWLES RICE LLP                             Counsel for Respondent
Charleston, West Virginia
Special Assistant Attorneys General
Counsel for Petitioner

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE WORKMAN and JUSTICE ARMSTEAD, deeming themselves disqualified, did not participate.

JUDGE MICHAEL D. LORENSEN and MICHAEL J. OLEJASZ, sitting by temporary assignment.

SYLLABUS BY THE COURT

1.      "'Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other before jurisdiction of a suit may be taken.' *Mainella v. Board of Trustees of Policemen's Pension or Relief Fund of City of Fairmont*, 126 W. Va. 183, 185–86, 27 S.E.2d 486, 487–88 (1943)." Syllabus Point 2, *Harshbarger v. Gainer*, 184 W. Va. 656, 403 S.E.2d 399 (1991).

2.      "Statutory 'judicial review' provisions—that make implementation of a statute contingent upon judicial construction, review, or approval of the statute; that attempt to mandate judicial construction, review, or approval of a statute prior to its effectiveness; or that have the purpose of creating a 'test case'—may violate the separation of powers doctrine contained in Article V, Section 1 of the *West Virginia Constitution.* Such statutory provisions are disfavored and courts are not obliged to accept and/or rule in proceedings that arise as a result of such provisions." Syllabus Point 1, *State ex rel. West Virginia Deputy Sheriffs' Association, Inc. v. Sims*, 204 W. Va. 442, 513 S.E.2d 669 (1998).

i

WALKER, Chief Justice:

From time to time, the Chief Justice of this Court temporarily assigns former judicial officers, who are designated by the Court as senior-status judges, to fill judicial vacancies that arise as a result of retirement, suspension, disability, or other circumstances. In 2018, this Court addressed West Virginia Code § 51-9-10 (1991), which authorized per diem payment to senior-status judges and placed an annual limit on a senior-status judge's combined per diem compensation and retirement income. The following year, the West Virginia Legislature amended that statute to specify a rate of per diem payment to senior-status judges on assignment and to create an exception to the annual limit on compensation in extraordinary circumstances. Now, as directed by amended § 51-9-10(f) (2019), John D. Perdue, State Treasurer of West Virginia (the Treasurer), seeks a writ from this Court prohibiting John B. McCuskey, West Virginia State Auditor (the Auditor), from processing payments to senior-status judges that exceed the per diem rate allowed in § 51-9-10 (2019). Because the Treasurer seeks an advisory opinion from the Court, we deny the writ.

## I.   FACTUAL AND PROCEDURAL HISTORY

In 1991, the West Virginia Legislature amended and reenacted West Virginia Code § 51-9-10[1] authorizing payment on a per diem basis to senior-status judges on temporary assignment at the direction of the Chief Justice of this Court.  Section 51-9-10 (1991) also stated that the per diem payment plus the senior-status judge's retirement income was not to exceed the salary of a sitting circuit court judge.[2]  In 2017, this Court issued an Administrative Order that acknowledged § 51-9-10 (1991) and also declared that "the chief justice has authority to determine in certain exigent circumstances that a senior judicial officer may continue in an appointment beyond the limitations set forth in W. Va. Code § 51-9-10, to avoid the interruption in statewide continuity of judicial services."

---

[1] 1991 W. Va. Acts Ch. 34 ("The West Virginia supreme court of appeals is authorized and empowered to create a panel of senior judges to utilize the talent and experience of former circuit court judges and supreme court justices of this state. The supreme court of appeals shall promulgate rules providing for said judges and justices to be assigned duties as needed and as feasible toward the objective of reducing caseloads and providing speedier trials to litigants throughout the state: *Provided*, That reasonable payment shall be made to said judges and justices on a per diem basis: *Provided*, however, That the per diem and retirement compensation of a senior judge shall not exceed the salary of a sitting judge, and allowances shall also be made for necessary expenses as provided for special judges under articles two and nine of this chapter.").

[2] In 1991, the annual salary of a sitting circuit court judge was $65,000.  1989 W. Va. Acts c. 183 (codified at W. Va. Code § 51-2-13 (1994)).  Effective July 1, 2011, the annual salary of a sitting circuit court judge rose to $126,000.  2011 W. Va. Acts c. 154 (codified at § 51-2-13 (2016)).

2

The 2017 Administrative Order and § 51-9-10 (1991) co-existed until 2018, when a panel of five circuit court judges appointed to temporarily serve on this Court issued *State ex rel. Workman v. Carmichael.*[3] Syllabus Point 4 of that decision states:

> West Virginia Code § 51-9-10 (1991) violates the Separation of Powers Clause of Article V, § 1 of the West Virginia Constitution, insofar as that statute seeks to regulate judicial appointment matters that are regulated exclusively by this Court pursuant to Article VIII, § 3 and § 8 of the West Virginia Constitution. Consequently, W.Va. Code § 51-9-10, in its entirety, is unconstitutional and unenforceable.[4]

Practically, Syllabus Point 4 left the 2017 Administrative Order as the sole authority controlling the payment of senior-status judges after the panel filed the *Workman* decision on October 11, 2018.

The Legislature amended § 51-9-10 in 2019.[5] The amended statute addresses the limit on the per diem payments to senior-status judges and the extraordinary circumstances in which the Chief Justice may authorize compensation over that limit, stating:

> (b) The Legislature recognizes and acknowledges the authority of the West Virginia Supreme Court of Appeals to recall retired judges and justices for temporary assignment and to create a panel of senior judges and justices to utilize the

---

[3] *State ex rel. Workman v. Carmichael*, 241 W. Va. 105, 819 S.E.2d 251 (2018), *cert. denied sub nom. W. Va. House of Delegates v. W. Va., ex rel. Workman*, ___ S.Ct. ___ (U.S. Oct. 7, 2019) (No. 18-893), and *cert. denied sub nom. Carmichael v. W. Va. ex rel. Workman*, ___ S.Ct. ___ (U.S. Oct. 7, 2019) (No. 18-1189).

[4] Syl. Pt. 4, *State ex rel. Workman*, 241 W. Va. at 105, 819 S.E.2d at 251.

[5] 2019 W. Va. Acts Ch. 67.

3

talent and experience of former circuit court judges and supreme court justices of this state: Provided, That extended assignment of retired judges and justices must not be utilized in such a way as to threaten the qualified status of the Judges' Retirement System under applicable provisions of the Internal Revenue Code . . . .

(c) Senior judges and justices recalled and assigned to service shall receive per diem compensation set by the Supreme Court of Appeals, but not to exceed $430 for each day actually served: Provided, That the combined total of per diem compensation and retirement benefits paid to a senior judge or justice during a single calendar year may not exceed the annual salary of a sitting circuit judge, except as set forth in subsection (d) of this section.

(d) Notwithstanding subsection (c) of this section, for purposes of maintaining judicial efficacy and continuity in judicial decisionmaking, a senior judge or justice may continue to receive per diem compensation after the combined total of per diem compensation and retirement benefits paid to the senior judge or justice during that calendar year exceeds the annual salary of a sitting circuit judge if the Chief Justice of the Supreme Court of Appeals enters an administrative order certifying there are certain extraordinary circumstances involving the necessary absence of a sitting judicial officer because of a protracted, but temporary, illness or medical condition or a lengthy suspension which necessitate the extended assignment of the senior judge or justice. Immediately upon entering such an order, the Chief Justice shall submit copies of the order to the State Auditor and the State Treasurer.

As § 51-9-10(d) (2019) indicates, the process of rendering payment to a senior-status judge involves the Chief Justice of this Court, the Auditor, and the Treasurer. To effect that payment, the Chief Justice directs the Auditor to issue a warrant for payment which then triggers the disbursement of funds to the particular senior-status judge by the Treasurer.

4

That process is the backdrop to subsection (f) of amended § 51-9-10. In subsection (f), the Legislature mandated the Treasurer to petition this Court for a writ prohibiting the Auditor from issuing a warrant to the Treasurer to pay a senior-status judge per diem compensation greater than the limitation on the daily rate of per diem compensation in § 51-9-10(c) (2019).[6] Subsection (f) states:

> [w]ithin 90 days after the effective date of [§ 51-9-10 (2019)], the Treasurer, as the chief custodian of public funds, shall petition the West Virginia Supreme Court of Appeals for a writ of prohibition pursuant to the court's original jurisdiction, naming as respondent the State Auditor and *petitioning the court to prohibit the State Auditor from issuing any warrant for the payment of per diem compensation to senior judges and justices in excess of the limitation on the daily rate of per diem compensation in [§ 51-9-10(c)].*[7]

The Treasurer has satisfied that obligation by filing the petition presently before us, which we now consider in light of our enduring principles of justiciability.

## II. STANDARD OF REVIEW

Section 51-9-10(f) (2019) requires the Treasurer to petition this Court for a writ of prohibition. Article VIII, Section 3 of the Constitution of West Virginia vests this Court with original jurisdiction over proceedings in prohibition. In cases that do not involve an alleged lack of jurisdiction (as is the case, here) this Court "will use prohibition in [a] discretionary way to correct only substantial, clear-cut, legal errors plainly in

---

[6] The Treasurer and the Auditor are members of the Executive Department. *See* W. Va. CONST. art. 7, § 1.

[7] W. Va. Code § 51-9-10(f) (2019) (emphasis added).

5

contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts . . . ."[8] In short, prohibition is an extraordinary remedy that is reserved for "really extraordinary causes."[9]

## III. DISCUSSION

The Treasurer argues that § 51-9-10 (2019) cures the constitutional infirmities found in the prior version of § 51-9-10, as identified in Syllabus Point 4 of the *Workman* decision. He reasons that because amended § 51-9-10 passes constitutional muster, it controls the payment of senior-status judges rather than the 2017 Administrative Order. He is entitled to the requested writ of prohibition, he concludes, because the Auditor will necessarily violate § 51-9-10 (2019) when he issues a warrant for per diem payment to a senior-status judge that is greater than the daily rate of per diem compensation set in § 51-9-10(c).

The Auditor neither endorses nor counters the Treasurer's argument. Instead, he responds by asking us to "resolve this controversy forthwith by announcing a new Syllabus Point or Points of West Virginia law interpreting § 51-9-10 [(2019)] in the circumstances of a senior-status judge receiving excess in compensation and retirement

---

[8] Syl. Pt. 1, in part, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979), *superseded by statute on other grounds as stated in State ex rel. Thornhill Grp., Inc. v. King*, 233 W. Va. 564, 570, 759 S.E.2d 795, 801 (2014).

[9] *State ex rel. Am. Elec. Power Co. v. Nibert*, 237 W. Va. 14, 19, 784 S.E.2d 713, 718 (2016) (internal quotation omitted).

benefits." Notably, neither the Treasurer nor the Auditor alleges that the Chief Justice of this Court has directed the Auditor to pay a senior-status judge per diem compensation greater than the daily rate of per diem compensation set in § 51-9-10(c). The appendix record is silent on that point, too.

### A. The Treasurer Seeks an Advisory Opinion.

The Treasurer's petition raises numerous questions, but we only have to consider one—the presence of a justiciable case or controversy—to conclude that we must deny the requested writ. West Virginia courts do not issue advisory opinions.[10] That rule exists for a very good reason:

> Since President Washington, in 1793, sought and was refused legal advice from the Justices of the United States Supreme Court, courts—state and federal—have continuously maintained that they will not give advisory opinions. And it is also well settled that litigants may challenge the constitutionality of a statute only insofar as it affects them.
>
> Art. III of the *Constitution of the United States* is sometimes cited as the source of the limitations of the "judicial power" to "cases and controversies." The "justiciable controversy" requirement in West Virginia is usually found in cases arising under the declaratory judgment act (even though the declaratory judgment act does not mandate an actual

---

[10] *See Kanawha Cty. Pub. Library Bd. v. Bd. of Educ. of Cty. of Kanawha*, 231 W. Va. 386, 403 n.22, 745 S.E.2d 424, 441 n.22 (2013) (recognizing that West Virginia as one of the large majority of state courts that will not render advisory opinions on pending legislation).

7

dispute or controversy), but the actual dispute or controversy rule applies to all West Virginia judicial proceedings.[11]

The requirement of a justiciable controversy and the prohibition against advisory opinions are two sides of the same coin. We explained this in Syllabus Point 2 of *Harshbarger v. Gainer* when we held that "'[c]ourts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other before jurisdiction of a suit may be taken.'"[12] In other words, to cause a West Virginia court to exercise its authority over parties to a suit, the parties must plead and then prove that there is an actual conflict between them that is redressable under the law. That necessary conflict is missing in this proceeding. The Treasurer contends, and the Auditor does not disagree, that § 51-9-10 (2019) and the 2017 Administrative Order conflict. The Treasurer likewise contends, and the Auditor does not disagree, that § 51-9-10 (2019) is constitutional and controlling. So, while we cannot say that the parties agree on either of those issues, we can say with certainty that they do not disagree. That observation, which is apparent from the parties' briefing, shows that there is no actual dispute or controversy between the parties that demands this Court to act.

---

[11] *Harshbarger v. Gainer*, 184 W. Va. 656, 659, 403 S.E.2d 399, 402 (1991) (internal notes and quotations omitted).

[12] Syl. Pt. 2, *id.* at 656, 403 S.E.2d at 399 (quoting *Mainella v. Bd. of Trustees of Policemen's Pension or Relief Fund of City of Fairmont*, 126 W. Va. 183, 185–86, 27 S.E.2d 486, 487–88 (1943)).

The Treasurer argues that the past actions of this Court, the 2017 Administrative Order, and the *Workman* decision show this Court's intent to someday direct the Auditor to cause the Treasurer to pay a senior-status judge a per diem amount greater than the limit specified in § 51-9-10(c) (2019). That possibility, the Treasurer contends, will require the Auditor to violate either § 51-9-10 (2019) or the 2017 Administrative Order and to direct the Treasurer to make an illegal payment, too, if the Auditor chooses incorrectly. The Court's past practices are just that: past. The Treasurer's forecast overlooks the fact that since amended § 51-9-10 took effect, the Chief Justice of this Court has not directed the Auditor to cause the Treasurer to pay a senior-status judge a per diem amount greater than the limit specified in § 51-9-10(c) (2019)—and may never do so. The Treasurer's petition presents a hypothetical controversy that we will not resolve with an advisory opinion.[13]

We recently faced a similar non-controversy in *City of Martinsburg v. Berkeley County Council*.[14] There, the City of Martinsburg claimed that properties owned by Berkeley County, but located within City limits, were subject to the City's zoning

---

[13] *See State ex rel. ACF Indus., Inc. v. Vieweg*, 204 W. Va. 525, 533 n.13, 514 S.E.2d 176, 184 n.13 (1999) ("As we frequently have said before, this Court cannot issue an advisory opinion with respect to a hypothetical controversy. . . . Thus, we conclude that we cannot entertain the petitioners' request for a writ of prohibition.").

[14] *Cty of Martinsburg v. Berkeley Cty. Cnc'l.*, 241 W. Va. 385, 825 S.E.2d 332 (2019).

code.[15]  The County took the opposite position and filed for a declaration to that effect.[16] The circuit court granted the County summary judgment, and the City appealed.[17]  We concluded that the circuit court lacked jurisdiction over the parties' dispute because the complaint did not

> allege any proposed or potential project that might implicate an analysis of the County's apparent authority to acquire real estate as it relates to the City's apparent authority to zone land within its jurisdiction. There has been no legal right claimed by the County to acquire particular real estate for or to construct a particular type of public building—or any building for that matter—and, consequently, there has been no right denied by the City based on one or more of its zoning ordinances. We are therefore asked to resolve an issue that has not, and indeed may not, ever arise.[18]

*City of Martinsburg* was an appeal in the context of a declaratory judgment action.  Here, the Treasurer invokes this Court's original jurisdiction in prohibition.  But that procedural difference is irrelevant because "[t]he writ of prohibition cannot be invoked to secure from this Court an advisory opinion."[19]  For example, in *F.S.T., Inc. v. Hancock County Commission*, petitioner F.S.T. anticipated that a Hancock County ordinance would

---

[15] *Id*. at 387, 825 S.E.2d at 334.

[16] *Id*.

[17] *Id*.at 388, 825 S.E.2d at 355.

[18] *Id*. at 389, 825 S.E.2d at 336.

[19] *State ex rel. Morrisey v. W. Va. Off. of Disciplinary Counsel*, 234 W. Va. 238, 246, 764 S.E.2d 769, 764 (2014) (cleaned up).

10

force the closure of its business.[20]  Rather than seek a formal determination from the County, F.S.T. petitioned the circuit court for a writ "prohibiting the Hancock County Commissioners from prohibiting [petitioner] from operating the establishment in the same manner as it had been previously operated . . . ."[21]  The circuit court denied the writ and F.S.T. appealed.  We, too, denied the writ because F.S.T. had not applied to the County Commission for a determination as to the ordinance's effect or been blocked from reopening its business.[22]  We reasoned that without a true clash of interests between F.S.T. and the County, we could not grant the relief sought by F.S.T.—a writ of prohibition—without also "'issuing an advisory opinion . . . to a situation that has not occurred.'"[23]

The rationale behind *City of Martinsburg v. Berkeley County Council* and *F.S.T., Inc. v. Hancock County Commission* applies equally to the Treasurer's petition.  In those cases, a party, or parties, sought an opinion from this Court regarding a hypothetical conflict.  The County and City's conflict was hypothetical because there was no legal right claimed by the County to purchase certain real estate or to construct a certain building that the City had denied.  And, F.S.T.'s conflict was hypothetical because the County had not

---

[20] *F.S.T., Inc. v. Hancock Cty. Comm'n*, No. 17-0016, 2017 WL 4711427, at *1 (W. Va. Oct. 20, 2017).

[21] *Id.*, 2017 WL 4711427, at *1.

[22] *Id.* at *2.

[23] *Id.* (internal quotations omitted) (quoting *State ex rel. Morrisey*, 234 W. Va. at 246, 764 S.E.2d at 777).

11

yet prevented F.S.T. from reopening its business or demonstrated, concretely, its intent to do so in the future. The conflict between the Treasurer and Auditor is similarly theoretical because the Auditor has not denied a legal right claimed by the Treasurer nor has the inverse occurred. In sum, the Treasurer asks us to issue a writ to resolve a conflict that has not—and may never—arise. So, in these circumstances, we cannot grant the Treasurer the requested writ because it would be an advisory opinion.

**B.      *This Court Disfavors Judicial Review Statutes and Is Not Obligated to Accept or Rule in Proceedings that Arise from Them.***

The Treasurer has petitioned this Court to issue a writ against the Auditor because that is what the Legislature directed him to do in § 51-9-10(f) (2019). That statute required the Treasurer to petition this Court for a writ of prohibition against the Auditor to stop him from issuing a warrant for payment to the Treasurer directing him to pay a senior-status judge in excess of the limitation imposed by the Legislature in § 51-9-10(c) (2019). So, an actual dispute or controversy between the Treasurer and Auditor did not precipitate the Treasurer's petition. Section 51-9-10(f) did.

We disfavor "judicial review" provisions like § 51-9-10(f) (2019) and said so twenty-one years ago in Syllabus Point 1 of *State ex rel. West Virginia Deputy Sheriffs' Association, Inc. v. Sims*:

> Statutory "judicial review" provisions—that make implementation of a statute contingent upon judicial construction, review, or approval of the statute; that attempt to mandate judicial construction, review, or approval of a statute prior to its effectiveness; or that have the purpose of creating a

12

"test case"—may violate the separation of powers doctrine contained in Article V, Section 1 of the *West Virginia Constitution.*[24] Such statutory provisions are disfavored and courts are not obliged to accept and/or rule in proceedings that arise as a result of such provisions.[25]

We explained in *Sims* that statutes like § 51-9-10(f) (2019) raise a wide range of possible objections and concerns. These include constitutional separation of power concerns, "insofar as the Legislature is attempting to direct the judiciary to rule on a case[.]"[26] That concern is compounded in this instance because the Legislature has directed the Treasurer, a member of the Executive Department, to invoke this Court's original jurisdiction for a writ against the Auditor, another member of the Executive Department. Similarly, if left unchecked, the Legislature may routinely include a judicial review provision in statutes "whenever [it] has constitutional or other uncertainties about [its] enactments[.] . . . [I]t appears to us that such a development would constitute an undesirable and probably impermissible alteration of our tri-partite constitutional scheme

---

[24] Article V, Section 1 of the *West Virginia Constitution* states:

> The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature.

[25] Syl. Pt. 1, *State ex rel. W. Virginia Deputy Sheriffs' Ass'n, Inc. v. Sims*, 204 W. Va. 442, 513 S.E.2d 669 (1998).

[26] *Id*. at 446, 513 S.E.2d at 673.

13

of government."[27]  For those same reasons, our dislike of judicial review statutes and the resulting test cases remains.

Admittedly, *Sims* recognizes that "in exceptional circumstances . . . it may be this Court's proper role to entertain an occasional friendly, 'test case' lawsuit—albeit cautiously."[28]  Quoting our earlier decision in *State ex rel. Alsop v. McCartney*,[29] we explained in *Sims* that:

> "[e]xperience dictates that there are occasions on which courts must undertake something in the nature of advisory opinions. We have done this in cases involving elections because of the expense attendant upon campaigns and the deleterious effect on representative government which uncertainty in elections causes. Similarly we have rendered essentially advisory opinions when it was necessary to permit bond counsel to authorize the marketing of bonds for public authorities. The need for certainty before the investment of enormous amounts of human effort and before the investment of vast sums of money has led us to an *ad hoc* reappraisal of the common law requirement of a true adversary 'case or controversy' as a condition precedent to court review."[30]

---

[27] *Id.* at 447, 513 S.E.2d at 674.  *See also State ex rel. Morrisey*, 234 W. Va. at 245, 764 S.E.2d at 776 ("The writ of prohibition is not a revolving door.").

[28] *Sims* at 447, 513 S.E.2d at 674.

[29] *State ex rel. Alsop*, 159 W. Va. 829, 834–35, 228 S.E.2d 278, 281 (1976) (denying writ of mandamus to strike down procedure adopted to nominate candidates for seven new circuit court judgeships).

[30] *Sims* at 446, 513 S.E.2d at 673 (quoting *Alsop*, 159 W. Va. at 834–35, 228 S.E.2d at 281 (internal citations omitted)).

14

The Treasurer's petition does not present any of those exceptional circumstances. The legal questions raised by the Treasurer at the Legislature's direction do not involve elections or the marketing of bonds for public authorities. And, they do not otherwise implicate "'enormous amounts of human effort . . . [or] vast sums of money'"[31] that might lead a court to reassess the necessity of a justiciable case or controversy before reviewing a particular issue. Moreover, as we recognized in *Sims*,

> Additionally and importantly, neither *Alsop* (nor any other case that our research has found, in West Virginia or elsewhere) gives us guidance regarding cases where a legislature has directed in a statutory provision that an agency of government must take action—including refusal to comply with other duly enacted provisions of the law—so that a "test case" will result.[32]

For all of those reasons, we conclude that the Treasurer's petition is not one of the rare proceedings in which this Court must undertake something in the nature of an advisory opinion.

## IV.  CONCLUSION

There is no actual controversy between the parties. The Treasurer has not petitioned this Court for relief because the Auditor has or has threatened to deny him a legal right. Instead, the Treasurer petitions for relief because that is what the Legislature mandated in West Virginia Code § 51-9-10(f) (2019). For all of the reasons stated in *Sims*,

---

[31] *Id.*

[32] *Sims* at 446, 513 S.E.2d at 673.

15

we disfavor judicial review provisions like § 51-9-10(f).  And as we held in *Sims*, we are "not obliged to accept and/or rule in proceedings that arise as a result of such provisions."[33]  We see no reason to depart from that holding now.  For those reasons, we deny the writ.

WRIT DENIED.

---

[33] Syl. Pt. 1, in part, *id.* at 442, 513 S.E.2d at 669.

16